UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL JAMES,

       Petitioner,

 v.              9:12-CV-857 (FJS-ATB)

BRANDON J. SMITH,

       Respondent.
_____

RONALD R. BENJAMIN, ESQ., for Petitioner
THOMAS B. LITSKY, Ass't Att'y Gen., for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

Petitioner, while still incarcerated at Mid-State Correctional Facility,[1] filed the instant habeas corpus petition by his counsel, pursuant to 28 U.S.C. § 2254. This matter was referred for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner challenges a judgment entered on March 24, 2007, in Broome County Court, based on his guilty plea, of Attempted Robbery in the Second Degree under N.Y. Penal Law ("Penal Law"), Sections 110 and 160.10(2)(a). Pursuant to a plea bargain, he was sentenced, as a second violent felony offender, to a determinate sentence of five years imprisonment and five years of post-release supervision. On

---

[1] Petitioner has since been released from prison, but continues on post-release supervision.

May 10, 2007, the Appellate Division, Third Department, affirmed the judgment of conviction.[2] *People v James*, 40 A.D.3d 1206, 833 N.Y.S.2d 916 (3d Dep't 2007). Petitioner did not seek leave to appeal to the New York Court of Appeals.

On May 10, 2011, petitioner filed a counseled motion to vacate the conviction pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10, asserting that the ineffective assistance of trial counsel caused petitioner to enter an involuntary guilty plea, despite his professed innocence. By Decision and Order, dated January 12, 2012, the County Court denied petitioner's motion. Petitioner sought leave to appeal to the Third Department, which was denied on April 20, 2012.

The petition, dated May 17, 2012, alleges that: (1) petitioner's guilty plea was not knowingly and voluntarily entered; and 2) he received ineffective assistance of trial counsel, in that, although petitioner insisted that he never intended to rob the victim, counsel did not investigate or otherwise attempt to defend petitioner, and browbeat petitioner into pleading guilty by "guarantee[ing]" that petitioner would be sentenced to no less than 15 years in prison if he proceeded to trial. (Pet. ¶¶ 20-21, 23, Dkt. No. 1). Respondent take the position that the petition "appears to be timely"[3] and

---

[2] Petitioner's appellate counsel filed an *Anders* brief on the ground that there were no non-frivolous issues to be raised on appeal. *Anders v. California*, 386 U.S. 738 (1967).

[3] Respondent's Memorandum of Law (at 9-10, Dkt. No. 7), explains why the petition appears to be timely under the AEDPA's one-year statute of limitation, 28 U.S.C. § 2244(d)(1), even though the petition, and the Section 440.10 motion which would have tolled the statute of limitations while the motion was pending, were filed four years or more after the Appellate Division affirmed the judgment of conviction. On May 10, 2007, when the Appellate Division affirmed petitioner's conviction, it also granted appellate counsel's application to be relieved. *People v. James*, 40 A.D.3d at 1206. To delay the judgment from becoming final, and to toll the AEDPA statute of limitations, petitioner would have had 30 days from service of a copy of the

2

that petitioner exhausted his state-court remedies by pursuing his Section 440.10 motion. However, respondent argues that the state court's findings that plaintiff's guilty plea was knowing and voluntary, and was not induced by ineffective assistance of counsel, were not contrary to, or an unreasonable application of Supreme Court Law. Respondent further contends that petitioner's claim that his trial counsel was ineffective in his pre-plea representation was waived when petitioner entered a voluntary guilty plea. (Respond.'s Mem. of Law, Dkt. No. 7). As set forth below, this court agrees with the respondent and will recommend denial of all claims raised in the petition.

I. **Relevant Facts and Procedural History**

   A. **Petitioner's Grand Jury Testimony**

During grand jury testimony in July 2005,[4] petitioner presented his version of the events that occurred during the evening of March 27, 2005 and that ultimately led

---

Appellate Division's Order to seek leave to appeal to the New York Court of Appeals. *See People v. Washington*, 86 N.Y.2d 853, 854, 633 N.Y.S.2d 476 (1995) (holding that "service by the prevailing party is necessary under C.P.L. [§] 460.10 in order to commence the time period for the other party to take an appeal"). After the Appellate Division relieved appellate counsel, petitioner was effectively unrepresented. However, respondent admitted that he was unable to establish that the District Attorney's Office served petitioner himself with a copy of the Appellate Division's Order. Therefore, petitioner's time to seek leave to appeal to the Court of Appeals has not yet expired, petitioner's judgment of conviction has not become final, and the AEDPA statute of limitations was not exceeded. *See Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999).

[4] In the affidavit in support of his Section 440.10 motion, petitioner claimed that he testified before the grand jury on March 30, 2005. (Petit.'s Aff. ¶ 4, State Court Record, Ex. E, Dkt. No. 8-5 at 6). The portion of the grand jury transcript in the state court record is undated; but a September 7, 2011 letter brief from the District Attorney stated that the grand jury considered petitioner's case during two sessions in July 2005. (Ex. F, Dkt. No. 8-6 at 3).

to his indictment on multiple charges[5] and his guilty plea to Attempted Robbery in the Second Degree.[6] (G.J. Tr. at 33-48, State Court Record, Ex. E, Dkt. No. 8-5 at 14-29).[7] Petitioner testified that he and his friends wanted "to get back at" the victim, Ryan James ("Ryan")–no relation to petitioner–because, *inter alia*, (1) Ryan had cheated petitioner and Dave Martin on a prior $20 marijuana sale, and Martin wanted his money back; (2) Ryan had been "hitting on" petitioner's girlfriend; and (3) Ryan and a group of his friends previously beat up petitioner. (G.J. Tr. at 37-40, 42). So, petitioner, his girlfriend, Dave Martin, and two other friends induced Ryan to get into a car with them, purportedly to go to a party. Instead, they drove to a secluded spot and, after two others wrapped a flannel shirt around Ryan's head, petitioner started punching Ryan in the face, five or six times. (*Id*. at 40-41, 44-46). One of petitioner's friends prevented Ryan from getting out of the car and yelled at petitioner to "run" [Ryan's] pockets. Petitioner "patted [Ryan] down real quick." Ryan told petitioner

---

[5] A Broome County grand jury charged petitioner and two others with two counts of Robbery in the Second Degree (Penal Law §§ 160.10(1) and (2)(a)), Assault in the Third Degree (Penal Law § 120.00(1)), and Conspiracy in the Sixth Degree (Penal Law § 105). (Indict., Ex. A, Dkt. No. 8-1 at 11-14).

[6] Petitioner alleges that, prior to grand jury, he agreed to plead guilty to a robbery charge in return for an indeterminate sentence of two to four years; but the County Court declined to accept the plea because petitioner would not admit that he intended to rob the victim. (Petit.'s Aff. ¶ 3). A transcript of the failed plea was not annexed to petitioner's Section 440.10 motion, nor included as part of the state record in this action. However, the transcript of a July 29, 2005 proceeding before the County Court Judge at least confirms that the judge rejected petitioner's attempted plea to Robbery in the Third Degree, before the case was presented to grand jury. (Ex. B, Dkt. No. 8-2 at 10).

[7] The court will refer to the page number of the grand jury transcript, a portion of which is included in Ex. E, not the page numbers in the header added by the CM-ECF electronic docketing system to Dkt. No. 8-5.

that he did not have anything, but then pulled a bag of marijuana ("weed") out of his pocket and threw it to Dave Martin. (*Id*. at 41-42).

Petitioner insisted that the point of the attack was to get back at Ryan "for all the stuff he did," that the incident "never had anything to do with robbing him," and the petitioner and his friends "didn't really demand [Ryan] to give up anything." (*Id*. at 42). Petitioner testified that he did not know that "anyone else got anything from [Ryan] other than a bag of weed[.]" (*Id*. at 47).

### B. Petitioner's Guilty Plea

On January 30, 2006, petitioner agreed to plead guilty to Attempted Robbery in the Second Degree under the second count of the indictment, which also referenced aiding and abetting liability under Penal Law § 20.00. (Indict., Second Count, Dkt. No. 8-1 at 12). In return for his guilty plea, petitioner was promised the minimum determinate sentence, as a second violent felony offender, of five years imprisonment and five years of post-release supervision, in full satisfaction of the four-count indictment and a pending violation of probation petition. (Plea Tr. at 2-4, 7, Ex. A, Dkt. No. 8-1 at 24-26, 29).[8] Under the plea bargain, petitioner was allowed to plead to a less serious class-D violent felony; as originally charged, Count 2 was a class-C violent felony carrying a maximum determinate sentence of between seven and 15 years for a second violent felony offender. (Indict., Second Count; Certif. of Convic., Ex. A, Dkt. No. 8-1 at 42). Penal Law §§ 70.02(1)(b), 70.04(1), (3)(b).

---

[8] Some or all of the plea transcript, as well as certain other documents from the state court record, appear in duplicate in more than one of the Exhibits making up Dkt. No. 8-1, 8-2, and 8-5. The court will refer to the internal page numbering of the plea transcript.

During the plea allocution, petitioner acknowledged that he had conferred with his attorney and had sufficient time to go over his decision to plead guilty. (Plea Tr. at 4-5, 6). Petitioner confirmed that no one had threatened or forced him, in any way, to plead guilty, and that he was pleading guilty freely and voluntarily. (*Id*. at 5-6). He stated that he understood that by pleading guilty, he was forever giving up his rights to offer any defenses to the charges and the other rights attendant to a jury trial. (*Id*. at 5). Petitioner also acknowledged that a conviction upon a guilty plea would have the same legal effect as if he went to trial and a jury found him guilty of that charge. (*Id*. at 3, 6).

Petitioner confirmed that, by pleading guilty to attempted second-degree robbery, he was admitting that on March 27, 2005, acting in concert with Dave Martin and another, he forcibly stole property from Ryan James, and that during the course of the commission of that crime, one of the participants actually caused physical injury to Ryan. (*Id*. at 6-7, 10). Petitioner specifically acknowledged that he, Martin, and several others drove the victim (Ryan) to a secluded area, where "[s]omebody in the back[seat] wrapped a shirt around [Ryan's] neck, "choking him[,]" while "[petitioner] started punching him." (*Id*. at 9-10). When someone told petitioner to go through Ryan's pockets, petitioner patted Ryan down, but didn't find anything. Ryan then "pulled out a bag of weed." The Court asked petitioner "You took that?" and the petitioner answered "Yes." (*Id*. at 9).

During the plea colloquy, the prosecutor proffered, based on grand jury testimony of witnesses, that at least some of the co-defendants also took a lighter and

possibly money from the victim. The prosecutor also noted that the victim testified in the grand jury that he suffered abrasions to his neck and "substantial pain." (*Id*. at 10). After again confirming that petitioner admitted that the victim suffered "physical injury," the County Court accepted petitioner's guilty plea, and adjourned the matter for sentencing. (*Id*. at 10).

### C. Petitioner's Sentencing

On March 24, 2006, in accordance with the terms of the guilty plea, the County Court sentenced petitioner, as a second violent felony offender,[9] to a determinate sentence of five years imprisonment, to be followed by five years of post-release supervision. (Sent. Tr. at 2-3, 6, Ex. A, Dkt. No. 8-1 at 36-37, 40). While the petitioner complained that being sentenced to five years in jail for a $35 robbery was "ridiculous,"[10] he did not contest the "legality or constitutionality of this conviction" or raise any issue regarding the performance of his attorney. (Sent. Tr. at 3-6). As part of the plea bargain, the court dismissed the separate charges that petitioner violated the terms of his probation. (Sent. Tr. at 6-7).

### E. Petitioner's Section 440.10 Motion

On May 10, 2011, four years after the Appellate Division affirmed petitioner's conviction, and over five years after his guilty plea, petitioner filed a counseled

---

[9] The petitioner did not contest the second violent felony offender statement (Dkt. No. 8-2 at 28), which disclosed his prior conviction for Attempted Burglary in the Second Degree. (Sent. Tr. at 2-3).

[10] The sentencing judge rejected the petitioner's assertion that the sentence was too harsh, noting that "this could have been [a lot] worse than a 35-dollar robbery" and reminding the petitioner that he was on probation at the time of the offense. (Sent. Tr. at 5-6).

7

motion to vacate the conviction, pursuant to N.Y.C.P.L. § 440.10. Petitioner alleged that his guilty plea was not voluntarily, knowingly, or intelligently entered and that he was "innocent of any attempt to rob Ryan James." (Petit.'s Aff. ¶¶ 1-2, Ex. E, Dkt. No. 8-5 at 5). Petitioner specifically claimed that "he had no intention of robbing Ryan" (Petit.'s Aff. ¶ 10), and that "the only motive I had with respect to my conduct on March 27, 2005 was to get even with Ryan James for beating me up" on an earlier occasion and for "trying to steal my girlfriend" (Petit.'s Aff. ¶ 7). He further alleged that he pled guilty, despite his prior protestations of innocence, only because trial counsel "guaranteed" that, otherwise, petitioner would lose at trial and receive a 15-year sentence. (Petit.'s Aff. ¶¶ 17-18, 22). Petitioner acknowledged lying during the plea colloquy, when he admitted his guilt and denied any threats or coercion to plead, but claimed that he lied because he was terrified of the alternative of a 15-year prison sentence. (Petit.'s Aff. ¶¶ 18-21).

In addition to arguing that his guilty plea was involuntary because his attorney "guaranteed" he would get 15 years in prison if he went to trial, petitioner contended that he received ineffective assistance from trial counsel in the course of the proceedings leading up to his conviction. (Petit.'s Mem. of Law at 1, Dkt. No. 8-5 at 47). Petitioner claimed that his lawyer refused to conduct any investigation or otherwise help petitioner with a defense. (Petit.'s Aff. ¶ 15). In particular, petitioner's attorney on his Section 440.10 motion argued that trial counsel provided constitutionally inadequate representation when he failed to conduct further investigation into whether the victim suffered a "physical injury"–an element of

8

Robbery in the Second Degree. (Petit.'s Mem. of Law at 6-7).

By Decision and Order, dated January 12, 2012, the County Court denied petitioner's Section 440.10 motion. (Ex. G, Dkt. No. 8-7). The court found that, during both his grand jury testimony and his plea allocution, petitioner "acknowledged that he was part of a plan to lure [Ryan] . . . to a secluded location to "get him back" for a previous marijuana deal in which [Ryan] . . . had shorted the [petitioner] in the amount of marijuana to be purchased,"[11] as well as Ryan's earlier assault of petitioner. (Decision & Order at 1). The court found that a review of petitioner's grand jury testimony and his plea allocution revealed that petitioner "entered a guilty plea knowingly and voluntarily," and that the record "belie[d] his current claim of actual innocence." (*Id*. at 2). Finally, the court found that defendant received meaningful representation from his lawyer, given that he negotiated an advantageous plea bargain, and given the absence of any evidence in the record casting doubt on the effectiveness of trial counsel. (*Id*.).

## II. The AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[11] Even in his petition supporting the Section 440.10 motion, petitioner acknowledged that David Martin, who came up with the idea of how to "get back" at Ryan by beating him up, wanted to get his money back from the prior marijuana deal with Ryan. (Petit.'s Aff. ¶ 8).

9

Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1398 (2011) (citations omitted).

A state-court decision is "contrary to" clearly established federal law if the state court's conclusion on a question of law is "opposite" to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *Id*.

Under the AEDPA, a summary disposition by a state court constitutes a disposition "on the merits." *Harrington v. Richter*, __U.S.__, __, 131 S. Ct. 770, 784-85 (2011); *see also Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (noting that where state courts summarily deny relief on the merits, "we must focus on the ultimate decisions of those courts, rather than on the courts' reasoning"). A federal court reviewing a Section 2254 claim must determine "what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 131 S. Ct. at 786.

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### III. Voluntariness of Petitioner's Guilty Plea

#### A. Applicable Law

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A court may determine that a defendant knowingly and voluntarily entered into a plea bargain from, among other things, his allocution statements. *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). Sworn statements made by a defendant in entering his plea carry a "strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d at 715.

To evaluate a claim that a guilty plea was involuntary or unknowing due to

11

ineffective assistance of counsel, courts must use the familiar framework established in *Strickland v. Washington*, 466 U.S. 668 (1984). *U.S. v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (citing *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (applying *Strickland* to the context of guilty pleas)). A defendant must first establish that "counsel's representation fell below an objective standard of reasonableness." *Id*. (quoting *Strickland v. Washington*, 466 U.S. at 688). Second, the defendant must show prejudice, in particular, that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. at 59).

**B.     Analysis**

Under Penal Law § 160.10(2)(a), a person is guilty of Robbery in the Second Degree "when that person forcibly steals property and when in the course of the commission of the crime . . ., that person or another participant in the crime causes physical injury to any person who is not a participant in the crime. The term physical injury means impairment of physical condition or substantial pain." N.Y. Pattern Jury Instructions ("N.Y.P.J.I."), PENAL LAW 160.10(2)(a). During the plea colloquy, the petitioner stated that he understood that these were the elements that he would need to admit to enter his plea. (Plea Tr. at 6-7).

Under Penal Law § 110.00, "a person is guilty of an attempt to commit a crime when, with intent to commit a crime, he or she engages in conduct which tends to effect the commission of such crime." N.Y.P.J.I., PENAL LAW § 110.00. Under New York law, "a defendant could be guilty of an attempt to commit robbery

12

"provided he intended to forcibly steal property, even though he did not intend the . . . physical injury to a non-participant which resulted; intent applied only to the 'core' crime of robbery, not the non-intentional 'aggravating element'." N.Y.P.J.I., PENAL LAW § 110.00 (citing *People v. Miller*, 87 NY2d 211, 638 N.Y.S.2d 57 (1995).

During the plea colloquy and the grand jury testimony, upon which the County Court relied during the plea (Pl. Tr. at 2, 3-4, 8), petitioner admitted facts regarding his March 27, 2005 attack on Ryan James that supported a finding that he acted with the requisite intent to forcibly steal property from the victim. Petitioner acknowledged the attack was motivated, at least in part, by the fact that Ryan had shorted petitioner and David Martin in a prior marijuana deal, and that Martin wanted his money back. (G.J. Tr. at 37-38, 39, 40, 44). While petitioner was beating Ryan, one of his accomplices told petitioner to go through Ryan's pockets, which petitioner did. Although petitioner states he did not find anything, Ryan then produced a bag of marijuana and threw it to Dave Martin, after which petitioner let Ryan go. (G.J. Tr. at 41-42, 47; Plea Tr. at 9).

Notwithstanding petitioner's denial, during his grand jury testimony, of any intent to rob his victim, there was a factual basis supporting his admission, during the plea colloquy, that he committed, and/or aided and abetted, an attempted robbery of Ryan. *See, e.g., Matter of Juan J.*, 81 N.Y.2d 739, 740-41, 593 N.Y.S.2d 768 (1992) (respondent and three accomplices accosted and verbally abused a man and woman on a subway platform, and then, after beating the man, held him down while one accomplice took his wallet from his pocket; these circumstances, and the perpetrators'

13

immediate flight after taking the man's wallet, provided a sufficient basis for the finding that the respondent acted with the intention of aiding in the commission of a robbery); *People v. Hope*, 128 A.D.2d 638, 512 N.Y.S.2d 885, 886 (2d Dep't 1987) (defendant's intent to forcibly steal property from the complainant may be inferred from the defendant's conduct and the surrounding circumstances; evidence that the defendant elbowed the victim in the side just prior to patting his pockets was sufficient to establish an attempted taking to be accomplished by means of the use or threatened use of force). The factual basis for petitioner's plea negates his argument that his trial attorney provided constitutionally ineffective advice to plead guilty notwithstanding petitioner's actual innocence. *See, e.g., Benigno v. U.S.*, 285 F. Supp. 2d 286, 299 (E.D.N.Y. 2003) (the Court declines "to give credence to assertions that an attorney advised a defendant to plead guilty irrespective of the truth of his innocence when the record as a whole belied such a protestation").

Even if the petitioner had not admitted an adequate factual basis supporting his plea to attempted robbery, that does not compel a finding that his plea was not knowing and voluntary. *See, e.g., U.S. v. Foster*, 06-4871-cr, 2008 WL 162845 (2d Cir. Jan. 18, 2008) ("'due process does not mandate a factual basis inquiry [into the charged conduct] by state courts[;]'" "[i]nstead, '[a] factual basis inquiry . . . is merely one way of satisfying the constitutional requirement that a plea be voluntary and intelligent.'" (quoting *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984)). The County Court "was entitled to rely upon" petitioner's sworn colloquy[12] that his guilty

---

[12] *U.S. v. Hernandez*, 242 F.3d at 112.

14

plea was knowing and voluntary, and not the result of any threats or coercion (Plea Tr. at 5-6), because such statements carry a "strong presumption of verity." *Blackledge v. Allison*, 431 U.S. at 74. Even if the court were to credit petitioner's belated claim that he was coerced into a plea because of his attorney's prediction that he would be convicted and receive a 15-year sentence if petitioner went to trial, that would not render his guilty plea involuntary. *See, e.g.*, *Fabre v. Taylor*, 08 Civ. 5883, 2009 WL 162881, at *16 (S.D.N.Y. Jan. 20, 2009) ("Every defendant involved in plea negotiations suffers the threat of conviction (often of greater charges or with a greater penalty), and must face such 'difficult choices.'") (*citing, inter alia*, *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'– and permissible–'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'"); *Spikes v. Graham*, 9:07-CV-1129 (DNH/GHL), 2010 WL 4005044, at *7 (N.D.N.Y. July 14, 2010) ("It is not coercion if a defendant pleads guilty to avoid a harsher sentence[;]" "[the state court] reasonably applied clearly established federal law to reach the conclusion that the trial judge and defense counsel did not coerce Petitioner, but rather properly informed him of the potential consequences of proceeding to trial"). *See also Harris v. Hulihan*, 11 Civ. 3019, 2012 WL 5265624, at *13-14 (S.D.N.Y. Aug. 8, 2012) (Report-Recommendation), *adopted*, 2012 WL 5266175 (S.D.N.Y. Oct 23, 2012) (although petitioner attempts to undermine the validity of his plea by contending that counsel's statement "induced"

his guilty plea, any advice about the likelihood of losing at trial is an important part of the decision-making process related to a plea offer).[13]

Five years after his guilty plea, petitioner claimed for the first time that he would have gone to trial had his attorney not "guaranteed" that he would be convicted and sentenced to 15 years in prison. Based on the authority stated above, this very belated claim is not sufficient to overcome petitioner's sworn colloquy that he knowingly and voluntarily pled guilty rather than face a jury trial. *U.S. v. Torres*, 129 F.3d at 715-16 (there is no reason to disturb the district court's conclusion that the defendant's clear and knowing plea allocution and his extreme delay in making the motion to withdraw his plea was ground for denying the motion without an evidentiary hearing). Moreover, the fact that the petitioner "secured a significant strategic benefit by pleading guilty," undercuts his claim that his plea was involuntary or induced by ineffective representation by his trial counsel. *Padilla v. Keane*, 331 F. Supp. 2d at 217 (citing, *inter alia*, *Feliz v. United States*, Nos. 01 Civ. 5544, 00 Cr. 53,

---

[13] In connection with petitioner's Section 440.10 motion, Attorney Benjamin contended that trial counsel's "guarantee" that petitioner would receive a sentence of 15 years if he did not plead guilty was an "affirmative misrepresentation" that rises to the level of ineffective assistance. (Petit.'s Mem. of Law at 5). However, an attorney's prediction that a judge will impose the maximum allowable sentence if a client proceeds to trial is not a misrepresentation, nor does it constitute ineffective assistance. *See Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) (the Second Circuit has emphasized that "[a]n erroneous sentence estimate by defense counsel does not render a plea involuntary") (citing, *inter alia*, *United States ex rel. Bullock v. Warden, Westfield State Farm for Women*, 408 F.2d 1326, 1330 (2d Cir. 1969)). The Second Circuit has also stated that a guilty plea cannot be withdrawn because a defendant's attorney misled him regarding the consequences of his plea. *See United States v. Hernandez*, 242 F.3d at 112-13. Further, the Second Circuit has dismissed the contention that a defendant's guilty plea was unknowing and involuntary due to misrepresentations by the prosecution and his own counsel concerning his possible sentence. *See Alessi v. United States*, 653 F.2d 66, 69 (2d Cir. 1981).

2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002) ("no prejudice exists when a plea agreement lessens the severity of the sentence defendant would face if convicted at trial"); *Harris v. Hulihan*, 2012 WL 5265624, at *14 (the fact that the plea bargain counsel negotiated appeared to have been quite favorable to petitioner negated his claims that counsel acted unreasonably or that he was prejudiced by his attorney's prediction that petitioner would lose if he went to trial). As noted above, petitioner's counsel negotiated a favorable plea bargain involving an admission to a less serious attempt charge, and indeterminate sentence of five years, in satisfaction of a pending probation violation and a more serious robbery charge on which petitioner could have been sentenced to between seven and fifteen years.

As noted above, the state court, in denying petitioner's Section 440.10 motion, found that plaintiff's guilty plea was knowing and voluntary, and was not induced by ineffective assistance of counsel. For all of the reasons set forth above, this court concludes that the state court findings were not contrary to, or an unreasonable application of Supreme Court Law.

## II. Effectiveness of Trial Counsel's Pre-plea Representation

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable]

17

standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett v. Henderson*, 411 U.S. at 267). "[C]laims of ineffective assistance of counsel relating to events prior to the plea that do not impact the voluntariness of the plea do not survive a guilty plea." *Vasquez v. Parrott*, 397 F. Supp. 2d 452, 463 n. 5 (S.D.N.Y. 2005).

As discussed in the prior section, petitioner's plea was not rendered involuntary by the advice that his attorney provided. Petitioner's arguments that trial counsel was ineffective in pre-plea representation, *e.g.*, by not conducting further investigation into whether the victim suffered "physical injury" was an antecedent claim not affecting the voluntariness of his guilty plea. Such claims are effectively barred from consideration in a habeas proceeding by *Tollett* and its progeny. *See, e.g.*, *U.S. v. Torres*, 129 F.3d at 715 (declining to address defendant's argument that his counsel was constitutionally ineffective by failing to interview and call certain witnesses at a pretrial suppression hearing because it was the type of pre-plea claim that a defendant may not assert following a guilty plea, pursuant to *Tollett* and *Coffin*); *Wimes v. Conway*, 10-CV-601T, 2011 WL 5006762, at *3 (W.D.N.Y. Oct. 20, 2011) (petitioner's claim that his counsel was ineffective for failing to investigate certain evidence and pursue an alleged alibi witnesses is barred from review by this Court because the claim does not relate to the voluntariness of his guilty plea); *Hill v. West*, 599 F. Supp. 2d 371, 392 (W.D.N.Y. 2009) (ineffective-assistance-of-counsel claims relating to pre-plea events, such as the failure to investigate potential witnesses, acquisition of discovery material, and decisions regarding a psychiatric examination,

18

were effectively waived under *Tollett v. Henderson* because petitioner's guilty plea was voluntary).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**Dated:** August 1, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge

19